# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 21-0108V

|  |  |
|---|---|
| MICHAEL LEACH, | Chief Special Master Corcoran |
| Petitioner, | Filed: June 6, 2024 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*John Robert Howie, Howie Law, PC, Dallas, TX, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On January 5, 2021, Michael Leach filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of a Tdap vaccine administered to him on May 17, 2019. Petition, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the total amount of **$38,175.00, representing Petitioner's actual pain and suffering and past unreimbursed expenses.**

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.   Relevant Procedural History

As noted above, this case was initiated in January 2021. On May 25, 2023, Respondent filed his Rule 4(c) Report arguing the claim should be dismissed. ECF No. 29. I thereafter encouraged the parties to settle the matter, but advised them that a briefing schedule would be set so that I might resolve this claim if they were unable to do so. ECF No. 30. Because the parties' efforts were unsuccessful, I set deadlines for the filing of briefs addressing both Petitioner's entitlement to compensation and an appropriate award of compensation (if Petitioner established entitlement). ECF Nos. 31-32.

On September 11, 2023, Petitioner filed a Motion for Ruling on the Record on Entitlement and Damages, arguing that he had established entitlement to compensation for his SIRVA injury, and requesting an award of $50,000.00 for past pain and suffering, plus $675.00 for past unreimbursed expenses. ECF No. 33.

On October 26, 2023, Respondent filed a Response to Petitioner's Motion for Ruling on the Record on Entitlement and Damages recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 35. Respondent further argued that in the event entitlement to compensation was found, Petitioner should be awarded the lesser amount of $37,500.00 for actual pain and suffering, and only $405.00 in unreimbursed expenses. *Id.*

Petitioner filed a Reply on November 13, 2023, and I subsequently scheduled this matter for a "Motions' Day" expedited hearing. ECF No. 36; Hearing Order (Non-PDF) filed April 19, 2024. The Motions' Day hearing took place on May 31, 2024. Minute Entry dated June 3, 2024.[3] I orally ruled on Petitioner's entitlement to compensation, and after hearing argument made an oral damages determination as well. This Decision memorializes those findings/determinations.

## II.   Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A).

---

[3] John Howie appeared on behalf of Petitioner, and Shelly Jock appeared on behalf of Respondent. The transcript of the May 31, 2024 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id*.

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a Tdap vaccine. 42 C. F. R. § 100.3(a)(II)(C). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## B. Factual Findings

### 1. Severity

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on May 17, 2019, and he therefore must demonstrate by preponderant evidence that his residual symptoms continued at least through November 17, 2019. The medical record establishes that Petitioner actively treated for his shoulder injury from *at least* July 11, 2019,[5] through

---

[5] Petitioner and his wife both state in their sworn affidavits that he more immediately (beginning the Monday morning following his Friday vaccination) sought guidance and/or treatment from his former doctor, Frank Perrone, MD. Ex. 1 at ¶¶ 5-7; Ex. 19 at ¶¶ 3-4. However, Dr. Perrone's records contain no documentation of Petitioner's telephone calls to his office, or alleged visit on May 30, 2019. While I find no reason to question the veracity of Petitioner's or his wife's statements in regard to his contact with Dr. Perrone, and his office, it is not necessary to rely on this evidence to make a severity finding in Petitioner's favor.

September 16, 2019. Ex. 6 at 8-9; Ex. 21 at 6, 8-9, 17; Ex. 7 at 60, 73. After the September appointment with orthopedist, Kenneth Kearns, MD, there is a gap of a little over a year until Petitioner next sought treatment for his injury. In light of this gap, Respondent reasonably questions whether Petitioner's injury persisted for six months.

I find, based on several factors, that Petitioner's injury likely persisted for more than six months despite the significant gap in treatment. First, I observe that Petitioner was symptomatic at his September 16, 2019 visit with Dr. Kearns – four months post vaccination. A physical exam performed on that date of Petitioner's left shoulder remained positive for impingement signs, and his range of motion was measured to 160 degrees in forward elevation, to 45 degrees in external rotation, and to T12 in internal rotation. Ex. 21 at 6.  Dr. Kearns recommended Petitioner engage in physical therapy. *Id.*

Petitioner explains in his sworn statements why he did not thereafter pursue physical therapy. Ex. 1 at ¶ 15; Ex. 24 at ¶¶ 3-4. He states that his daughter was born by emergency cesarean section only two months after his vaccination, his wife continued to recover from her surgery, and he was working full-time. Given these constraints, he determined that pursuing physical therapy "was not practical", despite having continued symptoms, and he instead elected to engage daily in at-home exercises provided to him. *Id.* Peittioner further explains the Covid-19 Pandemic later impacted his ability to obtain outpatient physical therapy in 2020. Ex. 1 at ¶ 15.

In reaction, Respondent notes that Petitioner did seek treatment following his daughter's birth, and also sought treatment on multiple occasions after the onset of the Covid-19 Pandemic for issues not related to his shoulder pain. ECF No. 36 at 11-12. However, I observe that Petitioner only sought treatment for issues requiring immediate attention, as opposed to routine check-ups. He clearly sought treatment for his shoulder injury between July 11, 2019 through September 16, 2019. Ex. 6 at 8-9; Ex. 21 at 6, 8-9, 17; Ex. 7 at 60, 73. Later, Petitioner sought treatment for isolated but acute events unrelated to his shoulder. Ex. 15 at 8-9 (November 10, 2019 urgent care visit for treatment of a skin abscess.); Ex. 6 at 10 (January 3, 2020 appointment for treatment of a viral infection); Ex. 15 at 11-13 (June 20, 2020 urgent care visit for treatment of a infected toe); Ex. 21 at 26-27 (June 26, 2020 specialist appointment regarding Petitioner's toe). It would not be reasonably expected that a patient would complain during such specific treatment events about unrelated concerns.

Finally, I observe that despite the large gap in treatment, Petitioner did seek further treatment at urgent care on October 1, 2020. Ex. 15 at 14. At that visit, Petitioner was prescribed prednisone and ibuprofen – although the record does not address whether he filled these prescriptions. *Id.* While Respondent correctly points out that the record contains no detail regarding the history or cause of Petitioner's shoulder pain (ECF No.

35 at 12), it does document that Petitioner sought further care for his shoulder pain (which was not resolved at his last orthopedic appointment on September 16, 2019) and is consistent with Petitioner's sworn statements that he experienced continued shoulder pain in the intervening period. Ex. 1 at ¶15. Moreover, Petitioner sought care at the same urgent care office on several occasions, and the office's records consistently lack detail or provide any history. *See, e.g.,* Ex. 15.

Accordingly. Petitioner has established that he suffered the sequela of his injury for more than six months.

## 2.   Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent contests is whether Petitioner's first post-vaccination symptom or manifestation of onset (specifically pain) occurred within 48 hours of his vaccination, as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)(II)(C) (pertussis vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); ECF No. 35 at 14-17. Based upon a review of the entire record, and for the reasons set forth below, I find that it more likely than not was.

Petitioner received a Tdap vaccine in his left deltoid on May 17, 2019. Ex. 3 at 12. On July 11, 2019 (not quite two months after the vaccination), Petitioner was seen by Dr. Michael Fischer, DO, for left shoulder pain. Ex. 6 at 8.[6] While Dr. Fischer's handwritten records are difficult to read, it is apparent from them that Petitioner was seen for a left shoulder problem that he reported in connection with his May 17, 2019 vaccination, and that he further reported pain with movement. Ex. 6 at 8.[7] On August 5, 2019, Petitioner completed paperwork in connection with an MRI wherein he provided that his left shoulder injury was "from [a] DTAP shot" and that the "length of [his] symptoms" was "3 months." Ex. 7 at 70. That same day Petitioner was evaluated by Dr. Kearns whose records state that Petitioner presented "with left shoulder pain after he had a Tdap injection on May 17, 2019. He did have swelling after the injection. He has had pain since." Ex. 21 at 8.

---

[6]As discussed *supra* at note five, Petitioner and his wife, both state in their sworn affidavits that he more immediately (beginning the Monday morning following his Friday vaccination) sought guidance and/or treatment from his former doctor, despite a lack of documentation in the medical record. Ex. 1 at ¶¶ 5-7; Ex. 19 at ¶¶ 3-4. Here again, I find no reason to question the veracity of Petitioner's or his wife's statements. However, I find it is not necessary to rely on this evidence to make a finding regarding onset. However, I do find that Petitioner more likely than not reported his injury to Dr. Perrone, and his office, in days immediately following his vaccination.

[7] This is consistent with the transcription provided by Petitioner of Dr. Fischer's record. Ex. 13*; see* Amended Petitioner, filed August 30, 2021, at 3 n. 3, for description of how the transcription was created.

The medical records cited above (Ex. 6 at 8, Ex. 7 at 70, Ex. 21 at 8) as supported by Petitioner's sworn statements from himself, his wife, and his mother (Ex. 1, Ex. 18, Ex. 19), preponderately support the conclusion that the onset of his shoulder pain likely began within 48 hours of his May 17, 2019 vaccination. I credit Respondent's arguments about the vagueness of certain records pertaining to onset in this case, but note that the Program's evidentiary standards are nevertheless satisfied under the circumstances. As I have previously observed, "the Vaccine Act clearly does *not* require that symptoms be recorded within a specific timeframe to be preponderantly established. Rather, it requires only that onset *occurs* in the relevant timeframe." *Niemi v. Sec'y of Health & Hum. Servs.,* No. 19-1535V, 2021 WL 4146940, at *4 (Fed. Cl. Aug. 10, 2021) (citing Section 13) (emphasis in original). Neither does the Act require that the medical records document an exact date that the onset of a petitioner's shoulder pain began. A special master may thus find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2).

### C.  Other Requirements for Entitlement

Based on the above, Petitioner has satisfied all requirements for a Table SIRVA. However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.,* receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established (as discussed above regarding six months sequela) or undisputed in this claim. I therefore find that Petitioner is entitled to compensation in this case.

### D.  Damages

#### 1.  Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages, and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections VII (subsections A and B) of *Crawford v. Sec'y of Health & Hum. Servs.,* No. 19-0544V, 2024 WL 1045147, at *20-22 (Fed. Cl. Feb. 5, 2024).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the

burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[8]

## 2. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, sworn statements, filings, and all assertions made by the parties in written documents and at the expedited hearing held on May 31, 2024. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

One factor immediately relevant to my determination is the fact that Petitioner's primary treatment course was relatively brief. Although I have found that Petitioner suffered the sequela of his injury for more than six months, the bulk of Petitioner's treatment occurred during the first four months following his vaccination. Thus, after Petitioner's September 16, 2019 visit with Dr. Kearns (Ex. 21 at 6), he sought no further treatment for his shoulder until over a year later. Ex. 15 at 14.

Subsequently (and another year later), in the fall of 2021, Petitioner engaged in multiple counseling sessions with Danielle Burnham, MA, ATR-BC, RYT as he was suffering anxiety, depression, and other symptoms related to his 2019 vaccine injury and a current workplace requirement that he receive a Covid-19 vaccination. Ex. 20 at 3-7; Ex. 21 at 34-35. Petitioner was also evaluated during this time by Dr. Fischer in connection with Petitioner's request for a Covid-19 vaccine exception in light of his anxiety stemming from his prior vaccine injury. Ex. 21 at 34-35. Dr. Fischer ultimately completed a medical certification for exception form for the Covid-19 vaccination for Petitioner. Ex. 22 at 2. However, this treatment took place for just over a month.

---

[8] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Other evidence (in addition to the substantial treatment gaps) underscores the mildness of the SIRVA at issue. Petitioner underwent xrays[9], an ultrasound[10], an MRI scan[11], and only one cortisone injection[12]. Ex. 21 at 9, 17; Ex. 7 at 60, 73. Petitioner elected not to pursue formal physical therapy. This suggests that Petitioner was able to manage his residual pain, and it was not so severe as to require further medical intervention.

In making my determination, I have fully considered Petitioner's sworn statements and those of his mother and sister. Ex. 1; Ex. 18; Ex. 19; Ex. 21. In particular, I acknowledge that Petitioner's injury occurred just before the birth of his daughter and impacted his ability to care for her. Additionally, I acknowledge that the birth of his daughter, recovery of his wife post-delivery, and the Covid-19 pandemic impacted Petitioner's decision not to pursue physical therapy.

In regard to past SPU reasoned SIRVA decisions, I find the cases offered by Petitioner in support of his request for a $50,000.00 award of pain and suffering to be reasonable comparables. *Mejias v. Sec'y of Health & Hum. Servs.,* 19-1944v, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (awarding $45,000.00 for pain and suffering); *Welch v. Sec'y of Health & Hum. Servs.,* 18-0660v, 2021 WL 4612654 (Fed. Cl. Spec. Mstr. Sept. 2, 2021) (awarding $55,000.00 for pain and suffering); *Rayborn v. Sec'y of Health & Hum. Servs.,* 18-0226v, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for pain and suffering). However, on balance these cases represent somewhat more severe SIRVA injuries requiring greater treatment. For example, the *McGraw* and *Welch* petitioners both underwent physical or occupational therapy – which Petitioner herein did not. *Welch,* 2021 WL 4612654, at *3; *Rayborn,* 2020 WL 5522948 at *3. While the *Mejias* petitioner exhibited *very* severe pain initially. He was seen for his injury only two days after his vaccination – stating he was unable to move his arm. *Mejias,* 2021 WL 5895622, at *3, 8.

However, the two most recent cases offered by Respondent in support of his proposed $37,500.00 award are better comparables to the instant case. ECF No. 39;

---

[9] On July 12, 2019, Petitioner underwent xrays which revealed a "large exostosis [along the] lateral aspect [of the] proximal humerus." Ex. 21 at 17.

[10] On July 19, 2019, Petitioner underwent an ultrasound of his left shoulder which showed a "a laterally located proximal humeral diaphyseal osteochondroma (exostosis) measuring roughly 4.2 x 1.5 cm." Ex. 7 at 60.

[11] On August 5, 2019, Petitioner underwent an MRI of the left shoulder – the impression was "osteochondroma along the proximal humeral area." Ex. 7 at 73. The MRI findings also indicated that "there may be some thinning of the supraspinatus tendon . . . [and] more posteriorly there may be some minimal undersurface tearing of the infraspinatus tendon insertion." *Id.*

[12] On August 5, 2019, Dr. Kearns provided Petitioner with a cortisone injection. Ex. 21 at 8.

*Valdez v Sec'y of Health & Hum. Servs*, No. 21-394, 2024 WL 1526536 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (awarding $35,000.00 for pain and suffering); *McGraw v. Sec'y of Health & Hum. Servs.,* 21-72V, 2024 WL 1160065 (Fed. Cl. Spec. Mstr. Feb. 15, 2024) (awarding $37,500.00 for pain and suffering). While there are distinguishing factors between the instant case and those cases all involve a relatively limited SIRVA in terms of severity and duration. While the evidence just preponderated in favor of a *general* finding of six months severity, the same record establishes an overall mild SIRVA that involved very light treatment – and therefore the pain and suffering award to be issued must reflect that.

Accordingly, **I find that $37,500.00 represents a fair and appropriate amount of compensation for Petitioner's past or actual pain and suffering.**

### 3. Appropriate Compensation for Unreimbursed Expenses

Section 15(a)(1)(B) of the Vaccine Act provides that Petitioner be awarded actual expenses which resulted from the vaccine injury, were incurred by or on his behalf, and were for the "diagnosis, medical or other remedial care, rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, *counseling, emotional or behavioral therapy*, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary." (emphasis added).

Petitioner seeks unreimbursed expenses of $675.00. Ex 23; ECF No. 34 at 23. Respondent recommends an award of $405.00. ECF No. 35 at 24. Respondent argues that Petitioner should only be awarded costs for his appointments and procedures through October 1, 2020. *Id.* Respondent specifically argues Petitioner should not be awarded costs for his counseling appointments with Ms. Burnham in 2021 and his November 4, 2021 appointment with Dr. Fischer, asserting that these appointments were in "furtherance of seeking an exemption to the Covid-19 vaccination mandate" and are not compensable. *Id.* Respondent also asserts this treatment should not support a higher damages award, because Petitioner did not seek the care of a psychiatrist or was appropriately diagnosed with a mental health condition. *Id.* at 19.

As discussed above, while Petitioner ultimately did request and obtain a medical certification from Dr. Fischer for a Covid-19 Vaccine exception, he requested the exception due to anxiety arising from his 2019 vaccine injury. Ex. 22. Moreover, Petitioner engaged in five counseling sessions with Ms. Burnham, his mental health therapist, wherein he addressed his fear, anxiety, and depression in this regard to receiving the Covid-19 vaccination (or losing his job), because of his 2019 vaccine injury. Ex. 20 at 3-7. I find this treatment sufficiently related to Petitioner's SIRVA to award Petitioner the

$270.00 associated with his counseling sessions with Ms. Burnham and his November 4, 2021 appointment with Dr. Fischer.

## Conclusion

**I award Petitioner a lump sum payment of $38,175.00 (representing an award of $37,500.00 for actual pain and suffering and $675.00 for unreimbursed expenses) in the form of a check payable to Petitioner.**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[13]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.